# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 967 | **DATE** | 2/19/2003 |
| **CASE TITLE** | U.S.A. vs. Yolanda Asia | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order reflecting oral ruling rendered on 02/04/03.
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 20 2003 | |
| ✓ | Docketing to mail notices. | | | 33 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | MW | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 00 CR 967 |
| v. | ) | |
| YOLANDA ASIA | ) | Geraldine Soat Brown<br>United States Magistrate Judge |

DOCKETED
FEB 20 2003

## MEMORANDUM OPINION AND ORDER

This case coming to be heard on the Defendant Yolanda Asia's oral motion to release her drug treatment records to her attorney and to allow her counsel to interview her drug treatment counselor, the parties having submitted briefs on the motion [dkt## 21, 25, 29, 30] and the court having heard oral argument, for the following reasons, the motion is hereby GRANTED in part, and DENIED in part.[1]

## FACTUAL BACKGROUND

On March 23, 2001, Defendant Yolanda Asia ("Defendant") was sentenced to three years' probation for violation of 18 U.S.C. § 1700, desertion of mail. In addition to the standard conditions of probation, Defendant was ordered to participate in a drug aftercare treatment program and to pay an $1,800 fine in monthly increments of $50.00. (March 23, 2001 Sentencing Order.)[Dkt# 16.] Defendant accordingly began drug treatment at Lutheran Social Services, Inc., ("LSS"), a federally-

---

[1] The court issued an oral opinion and order at the February 4, 2003 hearing on this matter. (Feb. 4, 2003 Order.)[Dkt#31.] This memorandum opinion sets forth in detail the basis for the court's opinion.

1

contracted treatment provider. On October 11, 2001, the Probation Office submitted a report indicating that Defendant had tested positive for cocaine and/or opiates on 11 occasions and failed to submit to an additional 17 random urinalysis tests during the first six months of her probation. (Govt.'s Opposition Mem. at 2.)[Dkt# 25.] No probation modification was requested at that time. (*Id.*)

On November 7, 2002, the Probation Office submitted an additional report on Defendants's probation record. In that report, Defendant's probation officer, Monica Courson, reported that Defendant had tested positive for cocaine use an additional four times, and had failed or refused to take an additional 37 random urinalysis tests over the period of December 4, 2001 through October 28, 2002. (*See* U.S. Probation Office Pet. on Probation and Supervised Release, 1-2, Nov. 7, 2002.) Probation Officer Courson further submitted that in the 19 months since her sentence, Defendant had paid her monthly $50 fine only two times. (*See id.* at 2.) Probation Officer Courson recommended that Defendant's probation be modified to require her to reside in community confinement at the Salvation Army for up to 120 days. (*See id.*)

At the November 22, 2002 hearing on the government's modification request, Defendant, by her counsel, orally moved to allow her counsel to review the LSS treatment records, and to allow her counsel the opportunity to interview her LSS counselor, Marie-Pierre Sernatinger. Defendant argued essentially that she is the holder of any applicable privilege, and as such, she is entitled to waive it. The government argued in response that because Defendant is a federal probationer who is in treatment only as a result of her conviction and sentence, she is not entitled to the drug treatment records simply upon her demand and consent, but rather, that federal law regarding probation information governs her request. Due to the nature of Defendant's request and the various state and

federal laws and regulations that may affect its disposition, this court ordered both Defendant and the government to submit memoranda on the issue.

## DISCUSSION

The issue presented to the court is whether by waiving confidentiality and authorizing the release of her drug treatment records to her defense counsel, Yolanda Asia, a federal probationer, may compel the disclosure of those records to her counsel, and similarly, whether by authorizing her defense counsel to interview her drug treatment counselor she may compel such an interview over the objection of the government and the Probation Office. While the issue presented is not an entirely novel one, there appears to be no decision with a written opinion in this jurisdiction directly on point.[2]

### I.  A Federal Probationer May Compel Disclosure of Her Drug Treatment Records Upon a Particular Showing of Need for the Information Contained Within Them.

In the context of a typical psychotherapist or social worker/patient relationship, there is a privilege against disclosure, which the patient herself may waive. *See Jaffe v. Redmond*, 518 U.S. 1, 15 (1996); 225 Ill. Comp. Stat. 107/75 (2002). Defendant is not a typical patient in such a relationship. Although she is receiving treatment from a licensed professional counselor, she is not

---

[2] The three cases cited by Defendant from this District either involved unopposed orders or did not deal in a specific way with the relevant circumstances and regulations at issue here. *United States v. Bratcher*, No. 01 CR 694-1, N.D. Ill. (Lindberg, J.)(June 12, 2002 and July 10, 2002), did not involve the revocation of probation; the court issued an unopposed order in *United States v. Vasquez*, No. 01 CR 49, N.D. Ill. (Leinenweber, J.)(March 20, 2002); and the order issued in *United States v. Murphy*, 01 CR 489, N.D. Ill. (Guzman, J.)(Aug. 14, 2002), does not provide a context for its holding nor discuss the relevant laws or regulations at issue here.

doing so in absolute privacy or by choice. Rather, her participation in drug treatment is a result of her criminal conviction and sentence. As a federal criminal defendant being treated by a counselor as a condition of her sentence of probation after conviction by a federal court, Defendant's request is governed by federal law and regulations, not by the law of the State of Illinois.

After a review of the relevant federal statutes, regulations and policies, it is the opinion of this court that a federal criminal defendant ordered to participate in drug aftercare treatment as a condition of her probation may not compel disclosure of her treatment records simply upon her request and her waiver of confidentiality. In certain circumstances, however, a federal probationer such as Defendant may have access to her treatment records upon a particular showing of the need for the specific information contained therein.

The confidentiality of drug treatment records is codified at 42 U.S.C. § 290dd-2(a), which provides:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse . . . treatment [or] rehabilitation . . . which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, [with certain inapplicable exceptions], be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd-2(a) (2003). Subsection (b) of that section allows for drug treatment records to be disclosed "in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section." 42 U.S.C. § 290dd-2(b)(1). Subsection (g) in turn provides:

4

> [T]he Secretary [of Health and Human Services] shall prescribe regulations to carry out the purposes of this section. Such regulations may contain such definitions, and may provide for such safeguards and procedures . . . as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section . . . .

42 U.S.C. § 290dd-2(g).

The Secretary has, in fact, prescribed regulations governing the confidentiality of drug treatment records of a federally assisted drug aftercare program. *See, e.g.,* 42 C.F.R. § 2.3 (2003). The regulations declare:

> [T]hese regulations impose restrictions upon the disclosure and use of alcohol and drug abuse patient records which are maintained in connection with the performance of any federally assisted alcohol or drug abuse program. The regulations specify:
>
> . . .
>
> (2) Disclosures which may be made with written patient consent and the form of the written consent . . .

42 C.F.R. § 2.3(a). *See also* 42 C.F.R. § 2.12 (2003) (defining federal assistance).

In this case, the government argues that there is no authority for Defendant to compel the production of the her LSS drug treatment records to her counsel. Specifically, the government points to Section 2.35 of the regulations in arguing that, in the context of a federal criminal defendant, the court may authorize disclosures of treatment records only to "those persons within the criminal justice system which have made participation in the program a condition of the disposition of any criminal proceedings against the patient or of the patient's parole or other release from custody," and only in certain limited circumstances. 42 C.F.R. § 2.35(a) (2003). Because defense attorneys are not included in the list of persons to whom a treatment program may make disclosures under this provision, the government reasons, Defendant may not authorize and thus compel the release of her

5

treatment records to her counsel.

The government is correct that Section 2.35 does not authorize Defendant's request, but it is incorrect in concluding that Defendant therefore is not entitled to her LSS drug treatment records.[3] Section 2.35 is crafted to prescribe the procedure whereby patients may authorize the release of confidential information to certain "individuals within the criminal justice system who have a need for the information in connection with their duty to monitor the patient's progress . . . ." 42 C.F.R. § 2.35(a)(1).[4] Defendant seeks disclosure of her records to herself, her counsel and her counsel's agent. Section 2.35 therefore is not applicable to Defendant's motion. Defendant's motion, however, is governed by Section 2.23 of the regulations, which directly addresses a patient's request for her own access to drug treatment records. *See* 42 C.F.R. § 2.23 (2003). Section 2.23 declares: "These regulations do not prohibit a program from giving a patient access to his or her own records, including the opportunity to inspect and copy any records that the program maintains about the patient." 42 C.F.R. § 2.23(a). Under Section 2.23, the program need not even obtain a patient's written consent prior to providing the patient with access to the records. *Id.*

The government argues that because a criminal defendant receives drug treatment as a term of probation, and because of the sensitive nature of confidential third-party disclosures which may

---

[3] In its argument, the government confuses the disclosure of confidential information "*of* 'persons within the criminal justice system,'" (Govt.'s Supp. Opposition Mem. at 2)(quoting 42 C.F.R. § 2.35)(emphasis added)[dkt# 29] with the disclosure of confidential information *to* certain "persons within the criminal justice system." 42 C.F.R. § 2.35(a)(emphasis added).

[4] The intent of Section 2.35 appears to be to limit access to the patient's records by others in the criminal justice system. This is consistent with the stated intention of the regulations: "to insure that an alcohol or drug abuse patient in a federally assisted alcohol or drug abuse program is not made more vulnerable by reason of the availability of his or her patient record than an individual who has an alcohol or drug problem and who does not seek treatment." 42 C.F.R. § 2.3(b)(2).

6

be contained in probation information, the policy of open patient access to records was not intended to apply in the unique instance of criminal justice referrals. In drafting Section 2.23, the government argues, "the Secretary did not take into account judicially-mandated counseling in the context of probationers and particular additional issues and concerns that such counseling involves." (Govt.'s Supp. Opposition Mem. at 2.) To the contrary, however, the regulations expressly define a "patient" in a federally assisted program to include a federal probationer. "Patient means any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program and *includes any individual who, after arrest on a criminal charge, is identified as an alcohol or drug abuser in order to determine that individual's eligibility to participate in a program."* 42 C.F.R. § 2.11 (2003)(emphasis added).

Under the regulations, a federally assisted program such as LSS is not *prohibited* from giving Defendant access to her records. However, that does not answer the question presented here, which is whether, and upon what conditions, the program may be *obligated* to disclose to Defendant such records, even over the objections of the Probation Office. The regulations disclaim an intention to compel disclosure:

> These regulations prohibit the disclosure and use of patient records unless certain circumstances exist. If any circumstances [*sic*] exists under which disclosure is permitted, that circumstance acts to remove the prohibition on disclosure but it does not compel disclosure. Thus, the regulations do not require disclosure under any circumstances.

42 C.F.R. § 2.3(b)(1). Other sources must be reviewed to resolve the issue.

The Director of the Administrative Office of the United States Courts (the "AO") has the authority to investigate the work of probation officers and to make recommendations concerning that work to the court. *See* 18 U.S.C. § 3672 (2003). One way in which the AO has done so is by issuing

a Probation Manual as part of its "Guide to Judiciary Policies and Procedures." (*See* Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures (the "Guide").) In addition to providing guidance and information to the judiciary, the Guide "codifies policies which are promulgated by the Director of the AO and approved by the Judicial Conference of the United States." (*See* Vol. 1, Guide, Ch. 1, Part A.) Like the Code of Federal Regulations, the Guide sets forth both the procedure governing specifically the disclosure of a defendant's treatment file to persons within the criminal justice system who have referred the defendant (tracking the regulations promulgated by the Secretary), and the procedure governing more generally a disclosure requested and consented to by the patient. (*See* Vol. 10, Guide, Ch. 10, Part I, ¶¶ 11, 13.)

Under the AO's Guide, "Any disclosure authorized and made under the regulations is restricted to only the information necessary in light of the need or purpose for the disclosure. A client may generally consent to disclosure only where such disclosure is for the benefit of that client . . . ." (*Id.* at ¶ 11)(noting also that this provision "does not affect the procedures for criminal justice referrals.") The Guide further specifies that a patient's consent for disclosure must be in writing and must contain, among other things, "the purpose or need for the disclosure, [and] . . . the extent or nature of the information to be disclosed." (*Id.* at ¶ 12.)

Like the Code of Federal Regulations, the AO's Guide acknowledges that the general consent procedures outlined in the Guide apply to federal probationers like Defendant by defining "patient" expressly to include "any individual who, after arrest on a criminal charge, is identified as an alcohol or drug abuser in order to determine eligibility to participate in a program." (*Id.* at ¶ 1(C).) Apparently, neither the federal regulations nor the Guide's provisions regarding the confidentiality of a patient's drug treatment records contain an express prohibition on Defendant's obtaining

8

disclosure of her treatment records.

However, it is the AO's position that probation supervision information is generally protected from disclosure "unless specifically permitted by statute, district or system wide policy or order of the court. The principle [*sic*] purpose for [the protection of probation information] is to help ensure candor on the part of the probationer and to maintain the free flow of information to the court via the court's probation officer." (Memo. from David N. Adair, Jr., Asst. Gen. Counsel, Admin. Office of the U.S. Courts, to Ronald Dyson, Drug Program Adminstr., Probation and Pretrial Services Div., *Drug Aftercare Confidentiality*, 1 (Dec. 1, 1992)(internal citations omitted), attached as Ex. 2 to Govt.'s Opposition Mem.)

There are a number of compelling reasons for protecting probation information from disclosure. The AO's counsel has opined:

> In order to obtain complete information to assure that persons under supervision are complying with the conditions imposed by the court; in order to monitor offenders' activities to determine if modification of conditions should be recommended to the court; and in order to better assist in the rehabilitation of offenders, probation officers and, ultimately, the court, need the most complete information possible. This is only possible if the offenders and other sources of information are assured of some measure of confidentiality with respect to their communications to probation officers.

(David N. Adair, Jr., *Confidentiality of Pretrial Services, Presentence, and Supervision Release Information*, 3, attached as Ex. 5 to Govt.'s Opposition Mem.) The courts have shared the AO's concerns. For example, the district court in *In re Application for Disclosure of Records of Probation Supervision of Horsford*, 699 F. Supp. 463, 464 (S.D.N.Y. 1998), refused to permit disclosure, even with the consent of the defendant's counsel, of the presentence report and records of probation supervision relating to defendant's federal conviction to an expert retained by a state court to conduct

9

a mental evaluation of defendant in connection with a state court indictment. The district court determined that the need for disclosure was not compelling when balanced against the risk that a breach of confidentiality might inhibit the ability of the Probation Office to accomplish its mission. *Id.*

The AO's counsel acknowledges, however, that although "there are principles governing the disclosure of [supervision information], the sources of these principles are not centralized and, except in those districts that have adopted local rules on the subject, there is no established procedure for determining the disclosability of this material pursuant to such a request." (David N. Adair, Jr., *Confidentiality of Pretrial Services, Presentence, and Supervision Release Information*, 1, attached as Ex. 5 to Govt.'s Opposition Mem.)

The Northern District of Illinois is one jurisdiction that has promulgated a rule governing the confidentiality of probation records. Under the Northern District of Illinois Local Criminal Rule 32.3, "Records maintained by the probation department of this Court relating to . . . the supervision of persons on probation are confidential. Information contained in the records may be released only by order of court. Requests for such information shall be by written petition establishing with particularity the need for specific information contained in such records." N.D. Ill. Loc. Crim. R. 32.3 (2003). Because a defendant may only obtain disclosure of probation information upon order of court, the court next must determine whether Defendant's LSS drug treatment records are probation information.

Defendant argues that because her treatment records are created and maintained by LSS, and because even the U.S. Probation Office has to obtain her consent before accessing her drug treatment records, they are not part of her probation information. (*See* Mem. in Support of Ms. Asia's Request

10

to Release Her Counseling Information and Records to Her Attorney at 5 ("Deft.'s Mem.").)[Dkt# 21.] She thus concludes that any rules or policies governing probation information have no applicability to her request. This court rejects that argument.

Defendant's drug treatment records clearly are a part of her probation information. But for the terms of her probation, Defendant would not be receiving treatment at LSS. Just as paying a monthly fine is a term of Defendant's probation, so too is her treatment at LSS. Defendant's participation in drug treatment is an element of her criminal sentence that is overseen by the U.S. Probation Office. Defendant acknowledges that she was required to sign a consent to the disclosure of otherwise confidential treatment information to the Probation Office as a condition of receiving services from LSS. (*See* Deft.'s Mem. at 2.) In fact, under LSS's contract with the government ("Blanket Purchase Agreement"),[5] LSS is required to maintain such a signed client consent in each client file. (*See* Blanket Purchase Agreement, Sect. C, ¶ 31(c)(6), attached as Ex. 4 to Deft.'s Mem.) The Blanket Purchase Agreement itself further recognizes that records created and maintained by LSS are to be considered probation information. Among other obligations, the Blanket Purchase Agreement declares that a provider such as LSS must:

> (2) Disclose client records upon request to the CUPSO/CPSO or his/her designee.
>
> (3) Make its staff available to discuss treatment of a client with the USPO/PSO.
>
> . . .
>
> (5) Disclose client records only in accordance with 42 C.F.R. Part 2,

---

[5] Only an excerpt of the Blanket Purchase Agreement was submitted to the court by Defendant. The court has received, however, no objection from the government as to its authenticity or to its applicability to LSS.

11

> and, where disclosure is permitted under those regulations, disclose only if consistent with the policies and procedures of the United States probation office or the Pretrial Services Confidentiality Regulations.

(*Id.* at ¶ 31(b)(2)-(5).) Requiring a patient's written consent to such disclosure prior to initiating drug treatment and incorporating the disclosure policies and procedures of the Probation Office into the Blanket Purchase Agreement acknowledges the Probation Office's interest in such records.

Moreover, the fact that Defendant's records are compiled by LSS and not the Probation Office itself is of little significance. In opining on a similar disclosure issue, the AO's counsel correctly noted, "There is no reason why the policy of confidentiality should be abandoned when another entity, pursuant to contract, collects information that is, in essence, probation supervision information. Though not directly compiled by the probation officer, the information is collected for supervision purposes and the same needs of confidentiality apply." (Memo. from David N. Adair, Jr., *Drug Aftercare Confidentiality*, 2 (Dec. 1, 1992), attached as Ex. 2 to Govt.'s Opposition Mem.)

Regarding the tension created by a probationer's specific request only for drug treatment records from within the probationer's file, the AO's counsel explained, "The Drug Aftercare Confidentiality Regulations overlap the confidentiality principle of supervision information. In most respects, the regulations are more restrictive. In some cases, however, such as disclosure to the probationer, they are less restrictive." (*Id.*) Counsel further noted, "[T]he principle [*sic*] point of contention is disclosure pursuant to the client's consent under the authority of 42 C.F.R. § 2.23. It is generally not harmful for the client to have information about his or her treatment and such information is routinely provided. What is not normally disclosed are supervision documents and files." (*Id.* at 3.)

Northern District of Illinois Local Criminal Rule 32.3 and the various disclosure procedures set forth in the Code of Federal Regulations and the AO's Guide together suggest a resolution of the issue before this court. Requiring a federal probationer to submit to the court a written request identifying the nature of the information in the records to be disclosed and setting forth with particularity the need for the specific information contained within the records balances the probationer's claim to the information with the government's interest in protecting confidential probation information.

## II. Defendant Has Demonstrated with Particularity a Need for Her Drug Treatment Records.

Having determined that in order for a federal probationer in the Northern District of Illinois to compel disclosure of her drug treatment records the probationer must by written petition demonstrate with particularity the need for the specific information contained in such records, the court next must determine whether in this case Defendant has done so.

Defendant initially presented her request to this court by oral motion. The court subsequently ordered the parties to submit memoranda on Defendant's motion, and then ordered the parties to submit supplemental memoranda to specifically address the impact of a particular regulation on Defendant's motion. (*See* Nov. 25, 2002 Order; Jan. 27, 2003 Order.)[Dkt## 18, 28.] Defendant's initial motion, therefore, has been converted to a written request by way of the subsequent briefing. To hold otherwise would be to elevate form over substance.

The government argues that Defendant has not established a need for the records because: (1) she already has a letter from her counselor setting forth her opinion and providing a summary of

13

Defendant's treatment;[6] (2) disclosing that type of summary meets any need Defendant may have for the information while simultaneously protecting confidential third-party disclosures; (3) the cost of open-ended discovery of treatment records will discourage treatment providers from doing business with the government; and (4) no relevant information will be obtained from disclosure of the records because Defendant has violated her probation so many times that the issue before this court is an appropriate sanction, and although Counselor Sernatinger may have opinions as to Defendant's motivations, the counselor has not asserted that Defendant will not continue to violate the terms of her probation if she is allowed to remain unconfined. (*See* Govt.'s Opposition Mem. at 13-17.) The court will deal with each of these arguments in turn.

Defendant currently faces the government's request that she be sentenced to community confinement as a direct result of Probation Officer Courson's report attesting to Defendant's numerous positive drug tests and missed drug tests. (*See* U.S. Probation Office Pet. on Probation and Supervised Release, Nov. 7, 2002.) Defendant intends to rebut the government's argument concerning her probation violations. In seeking her treatment records, Defendant asserts that her drug treatment counselor does not believe that confinement is appropriate, and that the records could provide the court with relevant information in mitigation of Probation Officer Courson's conclusions. (*See* Deft.'s Mem. at 1-2.) The government's argument for probation modification, and necessarily Defendant's defense, rest upon the information contained within Defendant's drug treatment records. Thus Defendant establishes with particularity a need for the treatment records.

Because of the central importance of the information contained within Defendant's treatment

---

[6] Although the court is unaware of the circumstances surrounding the creation and production of Counselor Sernatinger's summary (submitted under seal), its disclosure appears inconsistent with Northern District of Illinois Local Criminal Rule 32.3.

14

records to the issue of whether Defendant's probation should be modified, a counselor's summary in this case is insufficient. A more appropriate means of balancing the competing interests here is to allow Defendant access to the underlying information upon which the summary was prepared (*i.e.*, the LSS treatment records) after the records have been reviewed by the Probation Office and any confidential information disclosed by third parties has been redacted.[7] The government does not rely on a counselor summary but instead relies on the underlying information about Defendant's treatment performance in seeking to confine Defendant, and Defendant therefore is entitled to review such underlying information in preparing her defense.

Although the issue was not briefed at any length by the parties, Defendant suggests that because she seeks her treatment records to defend against the government's request for probation modification, she is constitutionally entitled to such records under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. None of the cases cited by Defendant deal specifically with the context of revocation or modification of probation, and the issue of whether information in the possession of the Probation Office must be reviewed for *Brady* material even at the trial stage apparently is not fully resolved.[8] However, it is not necessary to hold (and this opinion should not be read as holding)

---

[7] Defendant orally argued that because confidentiality requirements surrounding drug treatment services forbid a treatment provider from conversing with third parties without the patient's consent, Defendant should be entitled to open (unredacted) access to her treatment records. Because the purposes for protecting probation information are nevertheless relevant even when the patient is aware of the fact of third-party disclosures, and because the court does not know whether there would be such disclosures in a given set of treatment records, the court finds it appropriate to allow the Probation Office the opportunity to redact any such confidential information.

[8] *See U. S. v. Combs*, 267 F.3d 1167, 1175 (10th Cir. 2001), in which the defendant claimed that he should have been provided with information in the possession of Pretrial Services that a prosecution witness had tested positive for drugs three times before the trial. The court reviewed case law from various circuits and concluded that there are "two lines of cases – one line suggests that Pretrial Services is not covered by *Brady*, and one line suggests that *Brady* is broadly construed

that *Brady* applies to post-sentence modification of probation or that drug aftercare records are potentially *Brady* material in order to conclude that the same policies that require the government to disclose to the defendant favorable evidence for use at trial also apply to require disclosure of drug treatment records, where, as here, the history of that treatment is the basis upon which the government seeks to modify probation and impose confinement.

In light of Defendant's showing of particular need for the information she seeks, and because Defendant seeks only to copy existing documents, the court finds the issue of cost in this case insignificant and irrelevant.

The government's final argument against disclosure of Defendant's treatment records serves only to highlight Defendant's need for the specific information contained within them. The government argues in support of its request for probation modification that Defendant repeatedly has violated the terms of her drug treatment, that she will continue to violate those terms, and that her counselor's summary makes clear that she does not disagree. (*See* Govt.'s Opposition Mem. at 16-17; Govt.'s Supp. Opposition Mem. at 4.) Each of the government's assertions rests upon Defendant's drug treatment performance while on probation. In order to respond to the government's arguments, then, Defendant should be afforded the drug treatment records upon which the government makes them.

---

to apply to agencies in reasonable proximity to the prosecution." *Id.* at 1175 (internal citations omitted). The court held that there was no need to resolve the tension because the information was not material in that it would not have affected the outcome of the trial. *Id.*

## III. Defendant Has Not Demonstrated a Need for a Defense Counsel Interview of Her Drug Treatment Counselor.

Although the focus of the parties' briefs and arguments was the disclosure of Defendant's treatment records, Defendant also argues that she is entitled to authorize her attorney and her attorney's consultant to interview her drug treatment counselor. The parties have not briefed the issue of whether, even in the ordinary patient-therapist context, a patient can compel her therapist to speak to her attorney. Certainly the Probation Office has definite interests in avoiding its contractors being subjected to an interrogation by defense counsel or their agents outside of the supervision of the court. While not intending to cast a pejorative light on the motivations or methods of defense counsel or counsel's consultant in this case, the potential for abuse or harassment in other cases is apparent.

Defendant has not established with particularity the need for a direct interview of her drug counselor by her defense counsel. In this case the court has scheduled an evidentiary hearing on the issue of probation revocation or modification. Defendant's drug treatment counselor will be required to appear and to testify. Defendant and her counsel thus will have an opportunity to question Counselor Sernatinger at that time. Because the information contained in the treatment records will allow Defendant to meet the factual bases underlying the government's request for probation modification and to question the counselor at the hearing, at this point provision of the records is sufficient to meet Defendant's rights while protecting the interests of the Probation Office.

## CONCLUSION

For all of the aforementioned reasons, Defendant's motion to release her drug treatment records to her attorney and to allow her counsel to interview her drug treatment counselor is hereby GRANTED in part, and DENIED in part. This court finds that Defendant has established with particularity the need for the specific information contained within her Lutheran Social Services treatment records. The Probation Office is hereby ordered to produce to Defendant by February 18, 2003, a copy set of Defendant's LSS drug treatment records with any confidential third-party disclosures redacted from within the file, and to submit to this court at the same time a complete unredacted copy set of Defendant's drug treatment records along with redacted versions of such records for this court's *in camera* inspection, to ensure that the redactions are appropriate.

**IT IS SO ORDERED.**

/GERALDINE SOAT BROWN
**United States Magistrate Judge**

DATED: February 19, 2003